UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HAYWARD PROPERTY, LLC, a Michigan Limited Liability Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Florida Corporation,<br><br>Defendant. | Case No: 17-cv-06177 SBA<br><br>**ORDER ON CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Dkt. 145, 151 |

Plaintiff Hayward Property LLC ("Plaintiff" or "HPL") brings the instant action for breach of contract and negligence against Defendant Commonwealth Land Title Insurance Company ("Defendant" or "CLTIC"). The action involves a policy of title insurance that Defendant issued to Plaintiff for its property located at 2256 Claremont Court, Hayward, California (the "Property"). Presently before the Court are the parties cross-motions for summary judgment or partial summary judgment. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's motion for partial summary judgment, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND[1]

### A. PRIOR HISTORY OF THE PROPERTY

The property at issue in this action was once part of a tract of land (the "Tract") owned by CNF Properties, Inc. (f/k/a CF Properties, Inc.) in Hayward, California. It was originally divided into four parcels as reflected in Parcel Map 3094 filed with the Alameda County Clerk-Recorder. Rosenberg Decl., Exs. 1 & 2, Dkt. 151-1 to 151-4; Smith Decl. ¶ 3, Dkt. 151-6. The Tract encompassed three tax parcels: Alameda County Assessor's Parcel Numbers 463-25-40 ("APN 40"), 463-25-43-1 ("APN 43") and 463-25-44 ("APN 44"). Smith Decl. ¶ 2.

In 1997, CNF Properties, Inc. recorded a Notice of Lot Line Adjustment, converting the four parcels in Map 3094 into two—Parcel One and Parcel Two. Rosenberg Decl., Ex. 3; Smith Decl. ¶ 3. Although the Lot Line Adjustment map was accurate, the metes-and-bounds description of Parcel One erroneously omitted some of the courses and distances and therefore did not "close." Id. ¶¶ 2-5. Because the APNs were not adjusted when the lot lines were adjusted in 1997, the boundaries of APNs 40, 43, and 44 did not follow the lot lines for Parcels One and Two. Id. & Ex. 50. Parcel One contains parts, but not all, of APNs 40 and 43; it contains none of APN 44. Id.

#### 1. Parcel One

By grant deed recorded October 1, 1998, CNF Properties, Inc. conveyed Parcel One to its affiliate, Consolidated Freightways Corporation of Delaware. Rosenberg Decl., Ex 6. The grant deed included the same non-closing metes-and-bounds description from the 1997 Lot Line Adjustment. Id., Exs. 3 & 6; Smith Decl. ¶ 6. The grant deed also included a reference to APNs 43 and 44. Rosenberg Decl., Ex. 6. By correction grant deed recorded August 14, 2000, CNF Properties, Inc. modified the meets-and-bounds description of Parcel One to include the missing courses and distances. Rosenberg Decl., Ex. 7 ("2000

---

[1] The parties are familiar with the factual and procedural background of the action. Only those matters pertinent to the resolution of the instant motion are set forth herein.

Correction Deed"); Smith Decl. ¶ 6. According to the 2000 Correction Deed, Parcel One was said to contain "7.9 acres more or less." Rosenberg Decl., Ex. 7; Smith Decl. ¶ 6. The 2000 Correction Deed also refers to APNS 43 and 44. Rosenberg Decl., Ex. 7.

### 2. Parcel Two

On February 27, 2002, CNF Properties, Inc. conveyed by quitclaim deed its remaining interest in the Tract to Con-Way Transportation Services, Inc. ("Con-Way"). Rosenberg Decl., Ex. 8 (the "Con-Way Deed"). The Con-Way Deed was recorded in the official records of Alameda County on September 4, 2002. Id. It describes the property as "Parcels 1, 2, 3, and 4, parcel Map 3084 [*sic*] . . . Assessor's Parcel #463-25-040." Id. It does not reference the redrawn Parcels One and Two from the Lot Line Adjudgment. Id. Because CNF Properties, Inc. already had conveyed Parcel One to Consolidated Freightways Corporation of Delaware, however, the Con-Way Deed conveyed Parcel Two. See Westlake v. Silva, 49 Cal. App. 2d 476, 478 (1942) ("A quitclaim deed transfers whatever present right or interest the grantor has in the property.").

### B. THE UNDERLYING PROPERTY DISPUTE

#### 1. Plaintiff's Acquisition of the Property

Consolidated Freightways Corporation of Delaware filed for Chapter 11 bankruptcy in 2002. Rosenberg Decl. ¶ 10, Exs. 1, 9 & 35. Consolidated Freightways Corporation of Delaware obtained approval from the bankruptcy court to sell the Property, comprised of a fee interest in Parcel One and an easement appurtenant to Parcel Two. Rosenberg Decl., Ex. 9. In November 2002, Plaintiff's affiliate Crown Enterprises, Inc. ("Crown") and Consolidated Freightways Corporation of Delaware entered into a Purchase and Sale Agreement for the Property ("Purchase Agreement"). Id. The Purchase Agreement describes the Property in metes and bounds measures identical to those in the 2000 Correction Deed conveying a 7.9-acre parcel; it also refers to APNs 43 and 44. Id.

Plaintiff's beneficial owner and director, Matthew Moroun ("Mr. Moroun"), handled the selection and purchase of the Property. Rosenberg Decl., Exs. 11 (1/28/2019 Moroun Dep. at 44, 98-99, 102-105), 12 (2/8/2019 Moroun Dep. at 348, 350), 13 (11/7/2019

Moroun Dep. at 17-18).  Plaintiff's attorney, George Graham ("Mr. Graham") represented Plaintiff at the closing.  Rosenberg Decl., Exs. 13 (11/7/2019 Moroun Dep. at 46-47, 89), 18 (1/10/2020 Sundquist Dep. at 14/15, 24-26).  Mr. Graham, under the supervision of Richard Sundquist, was responsible for looking at the legal description and negotiating with Defendant regarding the terms of the title insurance policy.  Rosenberg Decl., Exs. 18 (1/10/2020 Sundquist Dep. at 25, 27-28), 21 (7/8/2020 Sundquist Dep. at 4-5, 13-14).

### 2. The Title Insurance Policy

On December 23, 2002, Defendant issued to Plaintiff a title insurance policy—Policy No. SLC02003178—insuring clear title to the Property.  Rosenberg Decl., Ex. 28.  The Property is described in Exhibit A to the Policy.  Id.  It includes the same legal metes-and-bounds description of the 7.9-acre parcel described in the Purchase Agreement and the 2000 Correction Deed.  Id.  The Policy also includes reference to APNs 43 and 44.  Id.

### 3. The Quitclaim Deed and Unrecorded Correction Deed

Consolidated Freightways Corporation of Delaware conveyed the Property to Plaintiff by quitclaim deed, recorded December 23, 2002.  Rosenberg Decl., Ex. 29 ("Quitclaim Deed").  However, the Quitclaim Deed was errantly recorded with a description of property located in Emeryville, California.  Id.

On April 14, 2003, the Alameda County Assessor's Office sent a letter to Greg Burcz ("Mr. Burcz")—an officer of Plaintiff's affiliate, Crown—advising that it was unable to process the quitclaim deed due to a "discrepancy" between the legal description of the property (in Emeryville) and the address listed in a preliminary change of ownership report (in Hayward).  Rosenberg Decl., Ex. 30 (the "Letter").  The Letter further advised: "If it were your intention to acquire parcels **463-25-43-1 & 44** [APNs 43 and 44], then it would be necessary for you to record corrected deed with the correct legal description."  Id. (emphasis in original).  Mr. Burcz spoke with Plaintiff's attorney, Mr. Graham, about the matter.  Rosenberg Decl., Ex. 18 (1/10/2020 Sundquist Dep. at 77-78).

Efforts were made to correct the deed.  In September 2003, Kay Hellman from LandAmerica National Commercial Services sent a letter to Mr. Graham, enclosing a

correction deed from Consolidated Freightways Corporation of Delaware to Plaintiff, to correct the erroneous Emeryville property description. Rosenberg Decl., Ex. 34. The correction deed contains a legal metes-and-bounds description of the Property that is identical to that in the Policy and the Purchase Agreement. Id. For unknown reasons, Plaintiff never recorded the correction deed.

### 4. The Adverse Claim

In or about March 2016, a dispute arose between Plaintiff and XPO Freight Logistics, Inc. ("XPO"), a corporate successor to Con-Way, over a large portion of APN 43 and all of APN 44 (the "Property in Question" or "PIQ"). Rosenberg Decl., Ex. 1 & 35. Plaintiff and XPO sued each other in the Alameda County Superior Court ("Superior Court") to quiet title to the PIQ. Id. The Superior Court ultimately determined that XPO holds title to the PIQ. Id. Among its findings and holdings, the Superior Court rejected Plaintiff's argument that references to APNs 43 and 44 created ambiguity in the relevant conveyancing instruments, noting that APNs are used to assess property taxes and are not relevant to issues concerning the alienation of real property. Id.

### C. THE INSTANT ACTION

On October 5, 2016, Plaintiff submitted a notice of claim—Claim No. 564353—to Defendant regarding its property dispute with XPO. Rosenberg Decl., Ex. 1. Defendant denied coverage for the claim on November 22, 2016. Id. Days later, Defendant accepted responsibility for the error concerning the erroneous Emeryville property description but otherwise reaffirmed its denial of coverage. Id.

On October 27, 2017, HPL filed the instant action against CLTIC, alleging causes of action for breach of contract and negligence. Dkt. 1. In its breach of contract claim, Plaintiff alleges that the Policy insures title to all of APNs 43 and 44, and that Defendant breached the Policy by failing to defend and indemnify Plaintiff for losses it incurred because of the defect in its title. In its negligence claim, Plaintiff alleges that Defendant also breached its duties as title agent and closing agent. In March 2018, Defendant filed a motion to dismiss the Complaint, Dkt. 20, which the Court denied, Dkt. 47.

On October 1, 2020, Plaintiff filed the instant Motion for Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56(a). Dkt. 145 ("Pl.'s Mot."). In response, Defendant filed a Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment. Dkt. 151 ("Def.'s Mot. & Opp'n"). Plaintiff then filed a Reply in Support of its Motion for Partial Summary Judgment and Opposition to Defendant's Cross-Motion for Summary Judgment. Dkt. 166 ("Pl.'s Reply & Opp'n"). Finally, Defendant filed a Reply in Support of its Cross-Motion for Summary Judgment. Dkt. 168 ("Def.'s Reply").

In the meantime, on October 7, 2020, Plaintiff filed a motion for leave to amend the Complaint, wherein it sought, inter alia, to add Commonwealth Land Title Company ("CLTC") and Fidelity National Title Insurance Company ("FNTIC") as defendants to its negligence claim. Dkt. 149. The Court denied Plaintiff's motion to amend. Dkt. 185.

## II.   LEGAL STANDARD

A party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "Summary judgment is appropriate only where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Salazar-Limon v. City of Houston, 137 S. Ct. 1277, 1280 (2017) (quoting Fed. R. Civ. P. 56(a)). The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that establish the absence of a genuine dispute of material fact. Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986)). If the moving party meets its burden, the burden then shifts to the non-moving party to go beyond the pleadings and identify specific facts demonstrating the existence of genuine issue of material fact. Id. (citing Celotex, 477 U.S. at 323-24). A dispute of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, all reasonable inferences are to be drawn in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. BREACH OF CONTRACT

The parties have filed cross-motions for summary judgment on Plaintiff's claim for breach of contract. Plaintiff moves for summary judgment on this claim, arguing that the Policy covers the Property in Question, and that Defendant breached the Policy by failing to defend and indemnify Plaintiff. Defendant argues, on the other hand, that it is entitled to summary judgment on the breach of contract claim on the grounds that: (1) Plaintiff's claim is untimely; and (2) the Policy does not cover the Property in Question because Plaintiff could not have reasonably believed that the Policy covered APNs 43 and 44.

The Court begins with the issue of timeliness. "[A]n action founded upon … a policy of title insurance" is subject to a two-year statute of limitations; "provided, that the cause of action … shall not be deemed to have accrued until discovery of the loss or damage suffered by the aggrieved party thereunder." Cal. Civ. Proc. Code § 339(1). In the title insurance context, "[t]he cause of action does not accrue '"[u]ntil discovery of the loss that may be incurred if the title is not as represented" …' in the policy." Lee v. Fid. Nat'l Title Ins. Co., 188 Cal. App. 4th 583, 600 (quoting Tabachnick v. Ticor Title Ins. Co., 24 Cal. App. 4th 70, 77 (1994)); see also 65 Butterfield v. Chicago Title Ins. Co., 70 Cal. App. 4th 1047, 1053-54 (1999). Defendant argues that, even assuming the Policy covered all of APNs 43 and 44, "HPL learned of a defect in that title by no later than 2003." Def.'s Mot. & Opp'n at 13. As discussed below, the Court agrees.

In April 2003, the Alameda County Assessor's Office informed Plaintiff by letter that it was unable to process the Quitclaim Deed. Rosenberg Decl. Ex. 30. The Letter advised that the Quitclaim Deed included a description for property located in Emeryville, California. Id. The Letter further advised: "If it were your intention to acquire parcels **463-25-43-1 & 44** [i.e., APNs 43 and 44], then it would be necessary for you to record corrected deed with the correct legal description." Id. (emphasis in original).

Plaintiff's principal and Rule 30(b)(6) deponent, Mr. Moroun, testified that the Assessor's Letter provided notice that the legal (or metes-and-bounds) description of its

Hayward property did not convey all of APNs 43 and 44.  Rosenberg Decl., Ex. 13 (11/7/2019 Moroun Dep. at 17:2-18-1; 74:7-78:1; 83:4-84-11; 88-2-10).  According to Mr. Moroun, Alameda County identified two distinct issues in the Letter: (1) the Quitclaim Deed erroneously identified a property in Emeryville; and (2) the legal description for Plaintiff's property in Hayward did not encompass all of APNs 43 and 44.  See id. at 74:24-75:4 ("In fact, I think they were saying they were -- the county was saying not only did you file a deed or record a deed for the wrong property altogether, but to the extent this is the one that you intended to file or would want to follow [*sic*] you needed to -- you needed to expand out the accessor parcel number descriptions and fix that, too."); 77:6-8 ("They said two things; right?  They said you got the – screwed up with the Emeryville and then you got to give legal description for both assessor parcel numbers."); 88:6-10 ("Alameda County told -- made it very clear that there needed to be a difference, you needed to expand on the parcel number description in order to properly transfer the title.").

Shortly thereafter, on September 11, 2003, Kay Hellerman sent Plaintiff's attorney, Mr. Graham, a letter enclosing a correction deed.  See Rosenberg Decl., Ex. 34.  The correction deed descripted the property in Hayward but contained the same legal (or metes and bounds) description that was ineffective to convey all of APNs 43 and 44.  It conveyed only the 7.9-acre Parcel One described in the 2000 Corrective Deed and the Purchase Agreement.  Mr. Moroun confirmed that the enclosed corrective deed did not cure the alleged title defect because it did not include "a full legal for both parcels," but instead only "the same thing that was attached to the [Purchase Agreement]."  Rosenberg Decl., Ex. 13 (11/7/2019 Moroun Dep. at 83:19-23) ("Now, for Alameda County, they wrote a letter back and said … you can't do it that way when you're filing. You need to do a legal -- a full legal for both parcels. All we got back was the same thing that was attached to the contract. That's not what Alameda needs."); see also id. at 88:2-10.  The enclosed corrective deed was never filed.

1  In view of the foregoing, Defendant has shown that Plaintiff discovered the alleged
2  title defect in 2003, when it received the Assessor's Letter and unrecorded corrective deed.
3  Because Plaintiff took no action until 2016, its claim for breach of the Policy is untimely.

4  Plaintiff's response to Defendant's statute of limitations argument is uncompelling.[2]
5  As an initial matter, Plaintiff argues that there is "no issue of fact [it] first learned of *XPO's*
6  *claim to PIQ* no earlier than March 2016, within two years of it filing this lawsuit."  Pl.'s
7  Reply & Opp'n at 11 (emphasis added).  According to Plaintiff, "[t]hat is the claim at issue
8  – that another party claims an interest in property covered by the Title Policy superior to
9  [its] interest."  Id. (emphasis omitted).  Plaintiff cites no authority to support this
10 proposition, however.  Contrary to Plaintiff's assertion, California courts have held that the
11 cause of action accrues, not upon discovery of an adverse claim, but upon "… *discovery of*
12 *the loss that may be incurred if the title is not as represented … in the policy.*"  Lee, 188
13 Cal. App. 4th at 600 (quoting Tabachnick, 24 Cal. App. 4th at 77) (internal quotation marks
14 omitted); see, e.g., 65 Butterfield, 70 Cal. App. 4th at 1054-62 (finding claim accrued when
15 insured learned of possible existence of an easement, which constitutes a cloud on title,
16 even absent formal enforcement of a claim to the easement).  Plaintiff alleges that it
17 believed it had purchased all of APNs 43 and 44.  Plaintiff's claim therefore accrued when
18 it discovered that the Quitclaim Deed was ineffective to convey that property.

19 Plaintiff otherwise fails to directly respond to Defendant's argument.  Plaintiff
20 asserts only that the Assessor's letter in April 2003 "inform[ed] it that the deed had the
21 wrong property description."  Pl.'s Reply & Opp'n at 11.  But this ignores Mr. Moroun's
22 testimony that the letter provided notice that the legal description of Plaintiff's property in
23 Hayward was ineffective to convey all of APNs 43 and 44.  Regarding Mr. Moroun's
24 testimony, Plaintiff asserts: "Mr. Moroun's testimony concerning the need for the deed to

---

[2] Plaintiff notes that the Court denied Defendant's motion to dismiss the Complaint on statute of limitations grounds.  Pl.'s Reply & Opp'n at 11.  Any reliance on the Court's order denying the motion to dismiss is misplaced, however.  A motion to dismiss tests only the sufficiency of the pleadings; the Court did not previously consider the evidence presented by Defendant in support of its motion for summary judgment.

accurately describe 'all of APN 43 and 44' is based upon his experience in this and the XPO Action, for which he had been deposed multiple times, and his understanding that XPO and CLTIC argue the metes and bounds do not include all of APN 43 and 44 – which he expressly testified he expected based on the Sale Order/PSA, his review of the 2001 Appraisal, and his visit to the property." Id. at 11-12 (citing Eyre Decl., Ex. 16 (Mouron Dep. at 145:09-146:16), Dkt. 166-1).  However, Plaintiff's characterization of Mr. Moroun's testimony does nothing to address or rebut the specific statements he made regarding the Assessor's letter.  See, e.g., Rosenberg Decl., Ex. 13 (11/7/2019 Moroun Dep. at 74:24-75:4, 77:6-8, 88:6-10).  Those statements constitute evidentiary admissions that, in the absence of any contradictory evidence, entitle Defendant to summary judgment.  See Snapp v. United Transportation Union, 889 F.3d 1088, 1103-04 (9th Cir. 2018) (providing that a corporation generally cannot present a theory of the facts that differs from that articulated by its Rule 30(b)(6) representative).  Plaintiff has offered no evidence correcting, explaining, or supplementing Mr. Moroun's deposition testimony.

Accordingly, the Court finds that Plaintiff's claim for breach of the Policy is untimely.  Because this is dispositive of the claim, the Court does not reach the parties' respective arguments as to whether the Policy covers APNs 43 and 44.[3]

**B.    NEGLIGENCE**

Plaintiff alleges a claim of negligence against Defendant in its purported capacity as title agent and closing (or escrow) agent.  Compl. ¶ 32 ("CLTIC owed a legal duty to HPL as *the title agent* and *closing agent* on its purchase of the Property to verify that HPL was obtaining title to the Property, ensuring that the proper documentation was recorded to protect HPL's interest in the Property, and paying only the taxes on the Assessor's parcels included with the real estate HPL was acquiring.") (emphasis added).

---

[3] For the same reason, the Court does not reach Defendant's objections to Plaintiff's reply evidence.  Dkt. 169.

1   While Plaintiff does not move for summary judgment on this claim, Defendant
2   moves for summary judgment on six grounds.  See Def.'s Mot. & Opp'n at 24-25.  Plaintiff
3   does not respond to four of Defendant's arguments.  See Pl.'s Reply & Opp'n at 14-15.
4   Even confining the analysis to the two arguments to which Plaintiff offers a response,
5   however, the Court finds that Plaintiff fails to present evidence showing a genuine dispute
6   of material fact for trial.

7   As noted by Defendant, Plaintiff now concedes that CLTIC acted neither as title
8   agent nor closing agent, as evidenced by its motion for leave to amend, wherein Plaintiff
9   sought leave to allege that two different entities—CLTC and Transnation Title Insurance
10  Company ("Transnation"), a predecessor in interest to FNTIC—served in those capacities.
11  See Dkt. 149 at 12-15; see also Rosenberg Decl., Ex. 40 ("Estimated Buyers Closing
12  Statement" showing payment of fees to Transnation and CLTC).

13  Plaintiff does not dispute that Defendant was not, in fact, the title or escrow agent.
14  Pl.'s Reply & Opp'n at 14.  Plaintiff nonetheless contends that it has not abandoned its
15  negligence claim against Defendant, but rather, has sought to pursue alternative theories of
16  liability (e.g., that persons involved in the closing acted at CLTIC's direction or as
17  CLTIC's agent).  Id.  According to Plaintiff, "[s]ummary judgment of the negligence claim
18  is premature prior to determination of the amendment."  Id.

19  The Court notes that Plaintiff's motion for leave to amend has been denied.  See
20  Dkt. 158.  Thus, Plaintiff's allegations and theories of liability are confined to those found
21  in the operative complaint.  Pickern v. Pier 1 Imps. (U.S.), Inc., 457 F.3d 963, 968-69 (9th
22  Cir. 2006) (refusing to allow the plaintiff to assert new specific factual allegations in
23  support of a claim when they were "presented for the first time in [the plaintiff's]
24  opposition to summary judgment").  As Defendant rightly notes, "[b]ecause HPL concedes
25  its core allegation—that [CLTIC] owed a duty as title or closing/escrow agent—is false,"

Def.'s Reply at 10, the claim alleged in the operative Complaint fails. Thus, Defendant is entitled to summary judgment on this ground.[4]

Even if Plaintiff could support a claim of negligence on an alternative theory of liability than that alleged in the Complaint, the action is time barred for the same reasons discussed above regarding the breach of contract claim. A cause of action for professional negligence is governed by a two-year statute of limitations under California Code of Civil Procedure section 339(1). See Thomson v. Canyon, 198 Cal. App. 4th 594, 606 (2011). Plaintiff learned of the alleged title defect in 2003. See supra Section III.A. Accordingly, Plaintiff's negligence claim is untimely.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendant's motion for summary judgment (Dkt. 151) is GRANTED and Plaintiff's motion for partial summary judgment (Dkt. 145) is DENIED. Judgment shall be entered in favor of Defendant. The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated: 09/30/2021

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
Senior United States District Judge

---

[4] The Court notes that, unless an insured separately contracts for an abstract of title, an action for negligence will not lie against a title insurer for failing to identify a defect in title at the time the title insurance policy issued. Hovannisian v. First Am. Title Ins. Co., 14 Cal. App. 5th 420, 429 (2017). Plaintiff does not allege that it contracted for an abstract of title. Thus, insofar as Defendant acted only as title insurer, a negligence claim fails as a matter of law.